IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| SANDRA L. SIMPSON,<br><br>       Plaintiff,<br><br>    vs.<br><br>WAYNE COUNTY, ILLINOIS, d/b/a<br>WAYNE COUNTY ILLINOIS HIGHWAY<br>DEPARTMENT, and GREG HEIDEN,<br>WAYNE COUNTY ENGINEER,<br><br>       Defendants. | Case No. 13-cv-359-SMY-SCW |

**MEMORANDUM AND ORDER**

      This matter comes before the Court on Defendants' Motion for Summary Judgment (Doc. 27). Wayne County, Illinois, d/b/a Wayne County Illinois Highway Department ("County," "Department" or "Board") and Greg Heiden ("Heiden"), Wayne County Engineer (collectively "Defendants") request this Court enter judgment in their favor on all counts of Plaintiff's Complaint. Plaintiff Sandra L. Simpson ("Simpson") filed a response (Doc. 31) to which Defendants replied (Doc. 45). For the following reasons, the Court grants in part and denies in part Defendants' Motion.

      **Background**

      Plaintiff's claims arise out of her employment by Wayne County's Highway Department. The following facts are undisputed. During her employment from 1999 until her termination in 2012, Plaintiff reported to the Department Engineer and performed clerical, administrative and general office management functions. The office for the Highway Department was housed separately from other county buildings such as the courthouse. As the standalone clerical staff in the Department, Plaintiff processed time sheets, maintained the computer system, processed

orders, assisted with budgeting and kept the books, as well as performed light cleaning of the office and removed trash from the building. She also prepared and submitted payroll reports for the County Treasurer, which required her to come in early on Mondays.

During Plaintiff's tenure at the Highway Department, she never received a performance evaluation or any verbal or written reprimand. While there were rumors that Plaintiff did not get along well with some of her co-workers, Plaintiff's employment was generally free of significant incidents until 2010. Until that time and with only two exceptions, pay raises were set uniformly, meaning that all employees received the same percentage increase or fraction of a dollar increase annually.

In preparation for the next regularly scheduled meeting of the Wayne County Highway Department Road and Bridge Committee, Loebach and the Committee Chairman agreed to propose a $2.00 per hour increase for all Department employees, with the exception of the Foreman, Gerald Melton. According to Loebach's affidavit, Loebach proposed the $2.00 per hour wage increase at the Committee meeting on January 13, 2010, as discussed. The Department Road and Bridge Committee approved the $2.00 increase for the maintenance employees, who were all male, and approved only a $.50 per hour wage increase for Plaintiff, who is female. Ultimately, the Board voted against each of the aforementioned wage increases. Defendants deny these allegations but admit that Plaintiff was first given a $.56 raise which was raised to $.90 after discussing the matter.

In January of the following year, Loebach allocated and budgeted a $1.00 per hour wage increase for all Department employees. Ultimately, the Board approved a $.70 increase for Plaintiff but approved increases for the male employees that ranged from $2.05 to $3.50 per hour. While Defendants deny that gender was a factor in making this decision, the Minutes of

2

the Wayne County Road and Bridge Committee Meeting dated January 12, 2011 state at line item 10, "Even though a $1.00 per hour wage increase was allocated and approved in the budget, the committee proposed to reduce the wage rate increase to $.70 per hour …. The $.70 was based on what other women had received." (Doc. 29-2 and 29-5, Sloan Dep. II, Ex. 9). Plaintiff complained in writing on January 12, 2011 to the Department Road and Bridge Committee concerning its actions on her wages.

On November 3, 2011, Plaintiff's attorney wrote a letter to the Board Finance Committee concerning the County Board's action on her wages, stating Plaintiff had been given no explanation for Board decisions regarding pay increases other than those "based on invalid and improper comparisons" and stating that, because the pool of employees with which Plaintiff's wages were being generalized was comprised nearly if not entirely of females, "gender discrimination in employment is implicated." (Doc. 29-2, Ex. 7).

On November 10, 2011, the Board reprimanded Plaintiff by way of a motion during the public portion of its meeting and voted to issue a warning letter to Plaintiff regarding termination of her employment. Although this was a closed executive session, the actions against Plaintiff were publicly reported in the media. No written warning letter or reprimand was submitted to the Court as evidence. A letter to Plaintiff from the Board dated January 24, 2012 addresses issues of overtime pay and approval procedures and states "failure to obtain the prior pre-approval of the Wayne County Board prior to working overtime… will result in disciplinary action against you up to and including discharge." (Doc. 29-2, Ex. 8).

A few months later, Loebach retired and was replaced by Defendant Greg Heiden. Plaintiff's job responsibilities did not change. Heiden stated in deposition that he sensed negativity from Plaintiff and that she was resistant to the changes he sought to implement. In

3

particular, Heiden desired to change certain procedures in regards to modernizing computer files so that forms would be filled electronically rather than on paper. Heiden acknowledged that Plaintiff was accustomed to handling all computer files and had adopted the practice of backing up files on an external hard drive which she took home with her in the evenings. This procedure was known and approved by Plaintiff's former supervisor. Heiden claims Plaintiff was hesitant to give him access to the files and also stated in deposition that Plaintiff "badgered" him with her concerns that she would be fired. (Heiden Dep. 72-76).

Heiden, needing access to the files from his own office computer, arranged to have a network set up in the office so he would not need to rely on Plaintiff for all computer file access. The parties do not agree on the facts arising from the network installation that occurred on September 4, 2012. According to Heiden, he anticipated issues with Plaintiff, decided to have the network installed without giving Plaintiff prior notice, and warned the installer that Plaintiff "was going to give him a ton of grief." (Heiden Dep. 197-200). He also arranged to have a witness present because he "wanted backup for when someone starts telling stories." (Heiden Dep. 188). Heiden stated Plaintiff "started going goofy" and "acting weird" when the network installer needed access to her computer, looking over his shoulder and stating that she didn't want him messing up her files. (Heiden Dep. 204). Heiden claims Plaintiff held up a flash drive that contained County files in a "taunting" manner but refused to give it to the installer because it contained correspondence with her attorney. (Heiden Dep. 209-217). Ultimately, Heiden called law enforcement to force Plaintiff's compliance.

Plaintiff testified by deposition that, on September 4, 2012, she felt Heiden was treating her like a criminal in that she was not informed of the network installation after being responsible for the computer for thirteen years. (Simpson Dep. 121). She was not able to work

4

most of the day because the installer was at her desk. (Simpson Dep. 119). After asking whether the installer would put everything back on her computer the way she had it and being told by the installer that he had erased her external hard drive, Plaintiff mentioned she also had work files on her personal flash drive as a second back up. (Simpson Dep. 122-123). Heiden demanded that she give it to him, and Plaintiff stated that some of the files were personal and contained privileged communication with her attorney regarding her pay rate complaints. (Simpson Dep. 124 & 133). Plaintiff admits that she did not give Heiden the flash drive until after he had called the police. (Simpson Dep. 137).

It is undisputed that, on September 14, 2012, the Department placed Plaintiff on administrative leave pending a hearing before the Board concerning her termination. Heiden, a co-worker, a Board member, and two Wayne County Sheriff's deputies waited on Plaintiff in the work parking lot to tell her she had been placed on administrative leave. Thereafter, on October 11, 2012, the Board adopted a resolution terminating Plaintiff, purportedly for insubordination and disrupting the workplace during the September 4, 2012, incident with Heiden.

Defendants seek summary judgment of Plaintiff's discrimination and retaliation claims on the basis they are time-barred or, in the alternative, that she has failed to meet her burden of proof in making the claims. Additionally, Defendants claim Plaintiff fails on both the Illinois common law retaliatory discharge claim and her claim for intentional infliction of emotional distress. Defendants also cite the Tort Immunity Act as protecting them from liability.

**Summary Judgment**

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Spath v. Hayes Wheels*

*Int'l-Ind., Inc.*, 211 F.3d 392, 396 (7th Cir. 2000). Where the moving party fails to meet its strict burden of proof, a court cannot enter summary judgment for the moving party even if the opposing party fails to present relevant evidence in response to the motion. *Cooper v. Lane*, 969 F.2d 368, 371 (7th Cir. 1992).

In responding to a summary judgment motion, the nonmoving party may not simply rest upon the allegations contained in the pleadings but must present specific facts to show that a genuine issue of material fact exists. Fed. R. Civ. P. 56(e)(2); *Celotex*, 477 U.S. at 322-26; *Johnson v. City of Fort Wayne*, 91 F.3d 922, 931 (7th Cir. 1996). A genuine issue of material fact is not demonstrated by the mere existence of "some alleged factual dispute between the parties," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986), or by "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, a genuine issue of material fact exists only if "a fair-minded jury could return a verdict for the [nonmoving party] on the evidence presented." *Anderson,* 477 U.S. at 252.

If the moving party is defending the claim at trial, he need not provide evidence affirmatively negating the plaintiff's claim. It is enough that he point to the absence of evidence to support an essential element of the plaintiff's claim for which she carries the burden of proof at trial. *Celotex*, 477 U.S. at 322-23, 325. Where the defendant has pointed to a lack of evidence for one of the essential elements of a plaintiff's claim, if the plaintiff fails to provide evidence sufficient to establish that element, there is no genuine issue of material fact. *Celotex*, 477 U.S. at 322-23. However, a "court may not assess the credibility of witnesses, choose between competing inferences or balance the relative weight of conflicting evidence; it must view all the evidence in the record in the light most favorable to the non-moving party and

resolve all factual disputes in favor of the non-moving party." *Reid v. Neighborhood Assistance Corp. of America,* 749 F.3d 581, 586 (7th Cir.2014) (*quoting Abdullahi v. City of Madison,* 423 F.3d 763, 769 (7th Cir.2005)).

Here, Defendants provide multiple arguments as to why summary judgment should be granted in their favor on all counts of Plaintiff's Complaint.  First, Defendants assert Plaintiff's claims of gender discrimination and retaliation under Title VII are time-barred.  Second, Defendants argue she cannot satisfy her burden of proof on her gender discrimination or retaliation claims under either the direct or indirect method.  Third, Defendants assert Plaintiff fails to establish her common law retaliatory discharge and intentional infliction of emotional distress claims.

**Timeliness of Plaintiff's Claims**

Defendants contend Plaintiff's discrimination and retaliation claims against the Department that are based on incidents occurring before February 18, 2012 (more than 300 days before Plaintiff filed her EEOC charge) must be dismissed as untimely.  The Court disagrees.  Regarding the statute of limitations for claims of discrimination and equal pay violations, courts have embraced the 2009 law enacted by Congress commonly known as the Lilly Ledbetter Fair Pay Act.  This law "amends Title VII of the Civil Rights Act of 1964 by providing that the statute of limitations for filing an EEOC charge alleging pay discrimination resets with each paycheck affected by a discriminatory decision." *Groesch v. City of Springfield, Ill.*, 635 F.3d 1020, 1024 (7th Cir. 2011).

Here, the statute of limitations on Plaintiff's Title VII claims did not begin to run until the date she received her final paycheck.  Therefore, Plaintiff's Title VII discrimination and retaliation claims are not time-barred.

### Title VII Discrimination Claim

Defendants next argue Plaintiff fails to satisfy her burden of proof under both the direct and indirect methods of proof available to Title VII discrimination plaintiffs. Plaintiff responds with citations to evidence of gender-based pay decisions that she claims satisfy the direct method of proof.

"A plaintiff can avert summary judgment for the defendant in an employment discrimination case by presenting enough evidence, whether direct or circumstantial, of discriminatory motivation to create a genuine issue for trial." *Radue v. Kimberly-Clark Corp.*, 219 F.3d 612, 616 (7th Cir. 2000). "Direct evidence essentially requires an admission by the decision-maker that his actions were based on the prohibited animus." *Id*.

Before the County Board voted on pay increases in January 2011, Plaintiff's supervisor had approved and budgeted a $1.00 per hour pay increase for all department employees, including Plaintiff. Ultimately, the Board approved raises for the male employees ranging from $2.05 to $3.50 per hour. These male employees were maintenance workers who had unionized. Plaintiff, as the Department's office manager, does not allege she was similarly situated. However, her discrimination claim does not rely solely on this fact. Rather, Plaintiff's complaint to the Board regarding unfair treatment centered on the Committee and Board's decision to reduce her $1.00 raise to $0.70 in order to bring her wages in line with the female employees of the courthouse. The minutes of the Committee meeting dating January 12, 2011 state: "Even though a $1.00 per hour wage rate increase was allocated and approved in the budget, the committee proposed to reduce the wage increase to $.70 per hour for [Plaintiff].... The $.70 was based on what other women had received."

Deposition testimony by Gary Sloan confirms this comparison and suggests the majority of the women in the courthouse who were clerical workers had other staff to assist them in their workload while Plaintiff performed a variety of office management functions in a standalone office with no other staff to share her workload. Gender, specifically, was cited by the defendants as the justification for reducing Plaintiff's pay increase, not similar job descriptions. Defendants have therefore admitted to making adverse pay decisions based on sex and it is not necessary to examine Plaintiff's evidence under the indirect method of proof. Because a fair-minded jury could return a verdict for Plaintiff on this evidence, the Court will not grant summary judgment on the Title VII discrimination claim against the Department.

**Title VII Retaliation Claim**

Defendants assert that the only clearly protected activity under Title VII was Plaintiff's filing of the EEOC charge, which came after Plaintiff's termination. Nonetheless, Defendants address the application of the direct and indirect methods of proof using Plaintiff's November 3, 2011 letter to the County as, *arguendo*, a protected activity. In that regard, Defendants argue Plaintiff fails to satisfy her burden of proof under both the direct and indirect methods of proof.

Title VII forbids an employer from discriminating against an employee who has "opposed any practice" made unlawful by Title VII or who "has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under [Title VII]." 42 U.S.C. § 2000e–3(a). The purpose of the anti-retaliation provision is to prevent employers from interfering with 'unfettered access' to Title VII's remedial mechanisms ... by prohibiting employer actions that are likely 'to deter victims of discrimination from complaining to the EEOC,' the courts, and their employers. *Stephens v. Erickson*, 569 F.3d 779, 786 (7th Cir. 2009) (quoting *Burlington N. & Santa Fe Ry. Co. v. White,* 548 U.S. 53, 68 (2006)).

9

Plaintiff can defeat Defendants' motion for summary judgment on her retaliation claim if she "presents either direct or circumstantial evidence of discrimination (the 'direct method') or indirect evidence that satisfies the three-part, burden shifting test outlined in the Supreme Court's decision in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792 (1973) ("the indirect method")." *Phelan v. Cook Cnty.*, 463 F.3d 773, 779 (7th Cir. 2006).

Under the direct method, Plaintiff must present direct evidence of (1) a statutorily protected activity; (2) a materially adverse action taken by the employer; and (3) a causal connection between the two. *Milligan v. Bd. of Trs. of S. Ill.* Univ., 686 F.3d 378, 388 (7th Cir. 2012). Activities ranging from an informal comment to the filing of an EEOC claim can qualify as a "protected activity" for Title VII retaliation purposes. *Davis v. Time Warner Cable of Southeastern Wis., L.P.*, 651 F.3d 664, 674 (7th Cir. 2011). In this case, to establish causation, Plaintiff must show that her complaint letter to the County was "a substantial or motivating factor" in the decision to terminate her employment. *Id.* (quoting *Leitgen v. Franciscan Skemp Healthcare, Inc.*, 630 F.3d 668, 675 (7th Cir. 2011)).

Direct evidence is rare and "would entail something akin to an admission by the employer." *Id*. "In the absence of an admission of a retaliatory motive by the defendant, a plaintiff can succeed… by presenting sufficient circumstantial evidence such that a jury could infer retaliation." *Phelan v. Cook Cnty.*, 463 F.3d 773, 788 (7th Cir. 2006). Summary judgment is inappropriate "if the plaintiff can assemble from various scraps of circumstantial evidence enough to allow the trier of fact to conclude that it is more likely than not that discrimination lay behind the adverse action…." *Morgan v. SVT, LLC*, 724 F.3d 990, 995-96 (7th Cir. 2013). Suspicious timing alone is generally insufficient to satisfy the element of causation, *Milligan*, 686 F.3d 378 at 389-90, but "close temporal proximity provides evidence of causation,

*Haywood*, 323 F.3d at 532, and may permit a plaintiff to survive summary judgment provided that there is also other evidence that supports the inference of a causal link." *Lang v. Illinois Dept. of Children and Family Serv.*, 361 F.3d 416, 419 (7th Cir. 2004).

Plaintiff's act of sending a letter complaining of gender discrimination from her attorney on November 3, 2011 constitutes a statutorily protected activity under Title VII. Plaintiff's termination on October 11, 2012 is undisputed as a materially adverse action taken by the employer. The causal connection between the two, however, requires a close examination of the evidence. No *direct* evidence exists, as no member of the Department has admitted to terminating Plaintiff's employment because of her gender discrimination complaint.

Regarding *circumstantial* evidence, Defendants' motion cites only suspicious timing in their effort to show a lack of circumstantial evidence. However, Defendants' behavior toward Plaintiff changed almost immediately after the November 3, 2011 letter from Plaintiff's attorney to the County, with actions that included promptly holding two closed meetings in which Plaintiff's employment was discussed, inexplicably reducing then restoring her pay, accusing Plaintiff of improperly receiving unauthorized overtime and removing her privilege of filling the gas tank of her personal vehicle once per month. The actions and the timing of these events are at least, curious.

Accordingly, Plaintiff has presented enough circumstantial evidence for a jury to infer retaliation and therefore to survive summary judgment on her claim of retaliation under Title VII.

**Common Law Retaliatory Discharge Claim**

In general, employers in Illinois enjoy "at-will" employment under which they can discharge an employee for any reason or no reason at all. *Stebbings v. Univ. of Chi.*, 726 N.E.2d

1136, 1140 (Ill. App. Ct. 2000). Illinois recognizes the limited tort of retaliatory discharge as an exception to the general rule of at-will employment." *Id*. However, the Illinois Human Rights Commission has exclusive jurisdiction over claims of retaliation stemming from civil rights violations, and the Illinois Human Rights Act gives courts no jurisdiction over such matters. *Mendez v. Perla Dental*, 646 F.3d 420, 422 (7th Cir. 2011). The only exception to this jurisdictional bar is where the retaliatory discharge claim is not "inextricably intertwined" with the alleged civil rights violation. *Id*. This Court does not have jurisdiction to consider this claim. An Illinois court would be barred by statute from considering a retaliatory discharge claim that is squarely based on a complaint of gender discrimination, and by extension, this Court may not consider the claim. The Court therefore dismisses this claim for lack of jurisdiction.

### Intentional Infliction of Emotional Distress Claim

The Illinois Supreme Court has established three elements necessary for claims of intentional infliction of emotional distress ("IIED"): "(1) the conduct involved must be truly extreme and outrageous; (2) the actor must either intend that his conduct inflict severe emotional distress, or know that there is at least a high probability that his conduct will cause severe emotional distress and (3) the conduct must in fact cause severe emotional distress." *Honaker v. Smith*, 256 F.3d 477, 490 (7th Cir. 2001) (citing *McGrath v. Fahey*, 533 N.E.2d 806, 809 (1988)). Illinois courts are hesitant to find that a plaintiff has a claim for IIED in employment situations, since "everyday job stresses should not give rise to a cause of action for [IIED]." *Vickers v. Abbott Labs.*, 719 N.E.2d 1101, 1115 (1999) (quoting *Miller v. Equitable Life Assurance Soc'y*, 537 N.E. 2d 887 (1989)).

Whether conduct is extreme and outrageous is judged on an objective standard, based on all the facts and circumstances of the particular case. *Graham v. Commonwealth Edison Co.*,

742 N.E.2d 858, 866 (2000). The Supreme Court of Illinois has established that liability only attaches in circumstances where the defendant's conduct is "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency." *Public Finance Corp. v. Davis,* 360 N.E.2d 765, 767 (1976) (quoting Restatement (Second) of Torts § 46, Comment *d* (1965)). The distress inflicted must be so severe that no reasonable person could be expected to endure it. *Graham*, 742 N.E.2d at 866.

Determining whether conduct is extreme and outrageous requires a consideration of factors including "the degree of power or authority which a defendant has over a plaintiff" (abuse of power), whether the defendant believes he is "pursuing a legitimate objective," and whether the plaintiff is particularly susceptible to emotional distress ("behavior that otherwise might be considered merely rude, abrasive or inconsiderate may be deemed outrageous if the defendant knows that the plaintiff is particularly susceptible to emotional turmoil)." *Honaker*, 256 F.3d at 491-92.

Illinois courts have found extreme and outrageous conduct in the employment context where the employer severely abuses its power, but courts generally will not classify such conduct as "extreme and outrageous" unless the conduct goes "well beyond the parameters of the typical workplace dispute." *Id.* at 491. Additionally, "greater latitude is given to a defendant pursuing a reasonable objective even if that pursuit results in some amount of distress for a plaintiff." *Id*. A legitimate objective, however, does not allow a defendant to pursue that objective by outrageous means. *Graham*, 742 N.E.2d at 867.

Determining whether Heiden's conduct rises to the level of "extreme and outrageous" for summary judgment purposes requires the Court to weigh these factors while viewing relevant facts in the light most favorable to Plaintiff. Heiden was Plaintiff's supervisor and had authority

over her.  Heiden made clear to the board that he did not want Plaintiff back on County property after their decision had been made and developed a plan under which he knew (and perhaps intended) she would be humiliated and emotionally distressed. Ultimately, however, Heiden was carrying out what he believed to be a legitimate purpose and for which he had an order of the Board.

Whether Plaintiff was particularly susceptible to emotional distress, and if she was, whether Heiden was aware of her sensitivities, is not supported by sufficient evidence from either party.  With all factors considered, Heiden's conduct simply does not rise to the level of "extreme and outrageous" as the law requires.  Accordingly, Defendant's Motion for Summary Judgment as to Plaintiff's intentional infliction of emotional distress claim is granted.  Further, as the Court has resolved both state law claims, it is not necessary to address Defendant's tort immunity claim.

**Conclusion**

- Defendants' Motion for Summary Judgment on the Timeliness of Plaintiff's Claims is **DENIED.**

- Defendants' Motion for Summary Judgment on Plaintiff's Discrimination Claim is **DENIED**.

- Defendants' Motion for Summary Judgment on Plaintiff's Retaliation Claim is **DENIED**.

- Defendants' Motion for Summary Judgment on Plaintiff's Common Law Retaliatory Discharge Claim is **GRANTED**.

- Defendants' Motion for Summary Judgment on Plaintiff's IIED Claim is **GRANTED**.

**IT IS SO ORDERED.**

**DATED: November 25, 2014**                                      s/ Staci M. Yandle
                                                                  STACI M. YANDLE
                                                                  DISTRICT JUDGE